Nicolas SANTORINAKIS, Appellant,

v.

THE S.S. ORPHEUS, her engines, boats, etc., in rem and Orpheus Marine Transport Corporation of Panama, a foreign corporation or association, as owners, operators, and agents of said vessel, in personam, Appellees.

No. 8068.

United States Court of Appeals
Fourth Circuit.

Argued May 30, 1960.

Decided June 6, 1960.

Melvin Friedman, Clayton, Mo. (Sidney H. Kelsey, Norfolk, Va., on the brief), for appellant.

John W. Winston, Norfolk, Va. (Seawell, McCoy, Winston & Dalton, Norfolk, Va., on the brief), for appellees.

Before SOBELOFF, Chief Judge, HAYNSWORTH, Circuit Judge, and BARKSDALE, District Judge.

PER CURIAM.

The Chief Steward of the Orpheus injured his shoulder when he slipped and fell upon the deck as the ship was departing the port of Hamburg, Germany. His claim for damages is the principal matter in controversy.

The Orpheus is owned by a Panamanian corporation, but is of Greek registry. The Chief Steward is a Greek citizen,

who signed shipping articles in Greece and joined the vessel in Rotterdam. There had been wage advances to the steward, however, which aggregated $292.60, of which $123 had been advanced in United States ports in violation of 46 U.S.C.A. § 599.

After the arrest of the vessel upon the wage claim, the District Court took jurisdiction of the entire controversy, a libel having been filed in which there were joined claims for personal injury, for the wage advances, for maintenance, and for additional wages for the duration of the contract of employment.

The District Court found against the Chief Steward upon all of his claims, except his claim with respect to the illegal wage advances in United States ports. However, it entered judgment in favor of the ship upon its cross libel for the net unearned wage advances made in foreign ports.

Since it is agreed the steward has received all of the payments and advantages due him under the Greek Collective Agreement, the remaining question is whether, in addition to, or in lieu of some of, those payments, he is entitled to damages on account of the injury to his shoulder in Hamburg.

The testimony shows that the Orpheus completed discharging a cargo of coal at Hamburg about 2:30 o'clock in the afternoon on August 17, 1957. She was scheduled to sail at 5:00 o'clock that afternoon.

The Chief Steward left the ship without permission at approximately 3:00 o'clock that afternoon and did not return to the dock until the ship, with the assistance of three tugs, was leaving the dock. By a launch, he approached the starboard side of the ship where a rope ladder with wooden rungs had been rigged for the use of the pilot, and, by means of this ladder, he came over the side of the ship. The testimony is in sharp conflict as to whether he placed his foot upon a bit in his effort to gain the deck, and his foot slipped as he did

so, or whether he gained the deck safely and thereafter slipped by reason of wet coal dust which was on the deck. The ship had been moored with her port side to the dock, but it is admitted that, during the unloading operation, coal dust had been spread over the decks on the starboard side as well as the port side.

The District Judge did not undertake to resolve the factual controversy, but concluded that there was no right to damages, even though the steward's version of his fall is accepted.

■ Upon abundant evidence, the District Court found that under the laws of the Kingdom of Greece, which govern us here,[1] there is no liability for unseaworthiness without fault. The ship is responsible in damages beyond her obligations under the Greek Collective Agreement, only when a violation of regulations or her negligence is the cause of the injury. Contributory negligence is no absolute bar, but mitigates the damages.

Applying the Greek law, as proven in this case, the District Court found that the presence of coal dust upon her deck at the time of the accident did not show negligence on the part of the ship.

■ The testimony shows that unloading a cargo of coal inevitably produces a substantial amount of coal dust, which is blown or scattered about the deck. When unloading is completed, it is necessary to hose down the deck to remove the dust, but the established procedure on this and other vessels is to first cover the hatches and secure the booms, tackle, gear and lines which had been used in handling cargo and mooring the ship. The sequence of work appears reasonable, for the decks cannot be efficiently hosed and washed until they have been cleared of the hatch covers and the unloading and mooring gear. There was no showing that the ship's getting underway on its long voyage down the protected river to the sea made the coal dust on the deck any more hazardous than it would have been if the ship had remain-

---

1. Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254.

ed tied to the dock. Nor was there any showing that the ship's getting underway when she did, leaving the deck to be hosed later, was either contrary to customary practice or negligent.

Under these circumstances, we think the testimony amply supports the findings and conclusions of the District Court.

Affirmed.